287 B.R. 827 (2002)
In re Gary Darnell GREEN, Debtor.
Educational Credit Management Corporation, Appellant,
v.
Gary Darnell Green, Appellee.
Bankruptcy No. 00-42076-13, Adversary No. 01-4037-SAC.
United States District Court, D. Kansas.
October 30, 2002.
*828 Frederick W. Schwinn, Consumer Law Center, P.A., Topeka, KS, for Debtor.
N. Larry Bork, Goodell, Stratton, Edmonds & Palmer, Topeka, KS, for Appellant.
N. Larry Bork, Goodell, Stratton, Edmonds & Palmer, Topeka, KS, for Appellee.
Jan M. Hamilton, Topeka, KS, trustee.

MEMORANDUM AND ORDER
CROW, Senior District Judge.
Educational Credit Management Corporation ("ECMC") appeals a single bankruptcy court order that was entered in the following three bankruptcy cases: In re Leana Rachele Wright and Daniel Ray Wright, 279 B.R. 886 (D.Kan.2002); In re Gary Darnell Green, Bkcy No. 00-42076-13; and In re Deanna Kathleen Gardner, 287 B.R. 822 (D.Kan.2002). In that order, the bankruptcy court sustained ECMC's objection to the debtors' attempts to obtain an undue hardship discharge of student loans through the chapter 13 plan confirmation process, but the court denied ECMC's request to adopt "a per se rule that sanctions will be imposed for using that procedure." (Dk.5, Appx.A, p. 11). ECMC has appealed that order in each of these chapter 13 cases and has filed briefs in each case that are substantially the same.[1] ECMC argues the bankruptcy court erred in not declaring a per se rule that it is a sanctionable event to file a chapter 13 plan containing this discharge language.
The first appeal, In re Leana Rachele Wright and Daniel Ray Wright, 279 B.R. 886 (D.Kan.2002), was assigned to Judge Rogers who filed his decision affirming the bankruptcy court on April 29, 2002. In re Wright, 279 B.R. 886 (D.Kan.2002). The second appeal, In re Deanna Kathleen Gardner, 287 B.R. 822 (D.Kan.2002), and the third appeal, In re Gary Darnell Green, No. 01-4036-SAC, were assigned to Judge Crow. The three appeals raise the same issues of law and the facts in each appeal do not bear on those legal issues. As the bankruptcy court explained in its order, ECMC was not seeking sanctions in those cases but only sought "a declaratory judgment so that such [plan] provisions would be sanctionable in future cases." (Dk.5, Appx.A, p. 2). Even though the parties did not request consolidation, these cases should have been consolidated on appeal under these circumstances.
STANDARD OF REVIEW
The court reviews the bankruptcy court's findings of fact for clear error. *829 In re Pena, 155 F.3d 1108, 1110 (9th Cir.1998). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). "Review under the clearly erroneous standard is significantly deferential, requiring a definite and firm conviction that a mistake has been committed." Concrete Pipe & Prods. v. Construction Laborers Pension Trust, 508 U.S. 602, 603, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993). The court reviews de novo the bankruptcy court's legal conclusions. In re Primeline Securities Corp., 295 F.3d 1100, 1105 (10th Cir.2002). The bankruptcy court's order does not include any findings of fact. The court shall review de novo the bankruptcy court's conclusion that the objectionable student loan discharge plan provision is not per se sanctionable.
RELEVANT LAW
The Bankruptcy Code creates a presumption making student loans non-dischargeable in the absence of undue hardship to the debtor or the debtor's dependents. 11 U.S.C. § 523(a)(8)(B). This provision "was enacted to prevent indebted college or graduate students from filing for bankruptcy immediately upon graduation thereby absolving themselves of the obligation to repay their student loans." In re Hornsby, 144 F.3d 433, 437 (6th Cir.1998). The burden of proving an undue hardship rests with the debtor. In re Woodcock, 45 F.3d 363, 367 (10th Cir.), cert. denied, 516 U.S. 828, 116 S.Ct. 97, 133 L.Ed.2d 52 (1995). The debtor must carry this burden by a preponderance of evidence. In re Brightful, 267 F.3d 324, 327 (3rd Cir.2001).
The Tenth Circuit in In re Andersen, 179 F.3d 1253 (10th Cir.1999), held that a bankruptcy court's order confirming a chapter 13 plan which contained language that summarily discharged an educational loan as an undue hardship was res judicata on the issue of undue hardship in a subsequent adversary proceeding. The Circuit reasoned that while the debtor may have the burden of proof, the creditor also "has a duty to ensure that its interests are adequately protected." 179 F.3d at 1257. Addressing arguments about the propriety of a plan containing such a provision and of a procedure that would discharge an education loan without an adversary proceeding, the Tenth Circuit observed:
That is, ECMC contends that, although no timely objection to the plan was filed and no appeal was taken following confirmation, Andersen had the burden of initiating an adversary proceeding in order to prove the otherwise uncontested fact of undue hardship. Without a judicial finding of such hardship at the close of an adversary proceeding, ECMC contends that the student loans cannot be discharged. We disagree. While Andersen surely had the burden of proving undue hardship, and while a discharge granted without such proof is inconsistent with the Code, it is critical that HEAF, as the party affected by this determination, failed to properly challenge the language at issue, the interim rulings of the bankruptcy court, or the confirmed plan. As we discussed above, it is absolutely incumbent upon a creditor to take an active role in protecting its interests, and a creditor which fails to do so is in a poor position to later complain about an adverse result. We echo the wisdom of the Third Circuit that, "[w]hile we do not understate the importance of the obligation of the bankruptcy court or the trustee to determine that a plan complies with the appropriate sections *830 of the Bankruptcy Code prior to confirmation of the plan, we nonetheless recognize that the affirmative obligation to object to the . . . plan rested with [HEAF], not with the bankruptcy court or the trustee." In re Szostek, 886 F.2d [1405] at 1414 [(3rd Cir.1989)].
179 F.3d at 1257-58. In justifying its holding, the Tenth Circuit relied not only on the creditor's failure to protect itself but also on "the strong policy of finality" protecting chapter 13 confirmed plans. 179 F.3d at 1258.
Agreeing with the analysis in In re Evans, 242 B.R. 407 (Bankr.S.D.Ohio 1999), the bankruptcy court in the Western District of Oklahoma held that the inclusion of a student loan discharge provision in a chapter 13 plan is a sanctionable event and that the Andersen decision provides no protection from sanctions. In re Hensley, 249 B.R. 318, 322-23 (Bankr.W.D.Okla.2000). Characterizing such plan drafting as simply an attempt to "trap an unwary student loan creditor" and as a type of impermissible "gamesmanship," the bankruptcy court rejected any reading of Andersen that would encourage the practice of including such plan provisions and highlighted the fact that the student loan creditor did not try to collect in Andersen until after the debtor had completed the plan payments and received a discharge of the student loan debt. 249 B.R. at 319-21. Finally, the court in Hensley saw the inclusion of a student loan discharge provision as analogous to a debtor's claim of an improper exemption, both made in the hope of no timely objection. 249 B.R. at 323. The court noted that the latter situation was one where the Supreme Court had recognized the availability of sanctions to deter such conduct. 249 B.R. at 324.
BANKRUPTCY COURT'S DECISION
The bankruptcy court disagreed with the reasoning in In re Hensley, 249 B.R. 318, 320-23 (Bankr.W.D.Okla.2000), and In re Evans, 242 B.R. 407, 409-13 (Bankr.S.D.Ohio 1999), insofar as their conclusion that the debtor's filing of an adversary proceeding is "absolutely essential to any kind of undue hardship declaration." (Dk.5, Appx.A, p. 8). The bankruptcy court construed the bankruptcy rules as permitting an undue hardship determination to be made either in an adversary proceeding or as a contested matter and opined that "the litigation would proceed in essentially in the same manner" under either procedure. (Dk.5, Appx.A, p. 4). The bankruptcy court was "unwilling to assume," as ECMC had done, that debtors and their counsel would include these student loan discharge provisions in the plan "when they have no basis in fact." (Dk.5, Appx.A, p. 8). Instead, it assumed that the debtors and their counsel by including provisions in their plan knew they were "certifying that to the best of their `knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . (3) the allegations and other factual contentions have evidentiary support.' Fed. R. Bankr.P. 9011(b)." (Dk.5, Appx.A, p. 8).
The bankruptcy court agreed with the Hensley decision that it would be improper and sanctionable for the debtors' counsel to use such plan provisions on the mere hope of trapping an unwary student loan creditor. (Dk.5, Appx.A, pp. 8-9). It further observed that an undue hardship determination at the time of plan confirmation ordinarily would be "premature" and only "advisory" and that not until the plan was completed and debtor entitled to discharge would the court be likely to have all the information relevant and necessary in making this determination. (Dk.5, Appx.A, p. 9-10). The court, however, recognized that a debtor could have unusual circumstances where his financial situation *831 was "almost certain to remain unimproved for the foreseeable future," such as debtor with "some permanent disability," and then an undue hardship determination could be made near the time of the plan's confirmation. The bankruptcy court concluded:
[T]he Court is convinced that, in nearly all factual circumstances, seeking an undue hardship determination at the time of confirmation is inappropriate, and therefore, including an Andersen provision in a plan would likewise be inappropriate. In effect, including such a provision in a plan constitutes an allegation that excepting the debt from discharge will impose an undue hardship on the debtor and the debtor's dependents under the circumstances that will exist in three to five years, not under those at the time the plan is proposed. Debtors and their counsel can properly include Andersen provisions in chapter 13 plans only when it is reasonable to make such an allegation.
(Dk.5, Appx.A, p. 10-11). Thus, the bankruptcy court sustained ECMC's objections to the debtors' inclusion of these plan provisions here but denied ECMC's request for "a per se rule that sanctions will be imposed" against debtors including such provisions in future chapter 13 plans.
CONCLUSION
Judge Rogers in In re Wright, 279 B.R. 886 (D.Kan.2002), affirmed the bankruptcy court for the following reasons:
The difference between the ruling of the bankruptcy court here and that in Hensley is one of degree. Both courts condemned the practice of filing plans with the aforementioned language. Both courts acknowledged that inclusion of this language was unethical and sanctionable. In Hensley, however, the bankruptcy court took the step of informing bankruptcy counsel that sanctions would be imposed in the future in every instance where such language was included in proposed Chapter 13 plans. The bankruptcy court here was unwilling to go that far. While acknowledging that such language was subject to sanctions, the court indicated that it would examine each individual case to determine if sanctions should be applied.
The bankruptcy court made a reasoned and appropriate analysis of the issue presented by ECMC. The court is persuaded by the reasoning and conclusions reached by the bankruptcy court. As correctly pointed out by the bankruptcy court, the inclusion of these provisions in a plan in the hope that they will trap the unwary student loan creditor should result in the imposition of sanctions. The court, however, does not believe that a per se rule should be adopted. Debtors' counsel are on notice that the filing of plans containing this language will not be allowed unless there is a good faith basis for them. This court believes, as did the bankruptcy court, that these matters can be handled when they arise. "[I]t is perfectly reasonable to expect interested creditors to review the terms of a proposed plan and object if the terms are unacceptable, vague, or ambiguous." In re Harvey, 213 F.3d 318, 322 (7th Cir.2000).
279 B.R. at 889. This court fully concurs with Judge Roger's reasoning and conclusion in Wright. Consequently, the court affirms the bankruptcy court's order in these two companion bankruptcy appeals for substantially the same reasons expressed in Wright.
IT IS THEREFORE ORDERED that the bankruptcy court's order of February 22, 2001, is affirmed.
NOTES
[1] In the appeal of In re Gary Darnell Green, No. 01-4037, ECMC filed an additional reply brief. Unlike like the other two cases, the debtor Green filed a brief on appeal. The reply brief does not address any facts or arguments unique to that case, nor does it raise any material issues not otherwise found in ECMC's original brief that was filed in all three appeals.